**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY<br>Three Commercial Place<br>Norfolk, Virginia  23510,<br><br>       Plaintiff,<br> v.<br><br>RIVERFRONT DEVELOPMENT CORPORATION OF DELAWARE<br>Chase Center on the Riverfront<br>815 Justison Street<br>Wilmington, DE 19801,<br><br>THE BUCCINI/POLLIN GROUP, INC.<br>322 A Street, Suite 300<br>Wilmington, DE 19801,<br><br>PENN CINEMA MANAGEMENT COMPANY, LLC,<br>541 Airport Road,<br>Lititz, PA 17543,<br><br>PENN CINEMA RIVERFRONT LLC<br>322 A Street, Suite 300<br>Wilmington, DE 19801,<br><br>STAR BUILDING, LLC<br>234 North James Street<br>Newport, DE 19804,<br><br> and<br><br>PETTINARO CONSTRUCTION COMPANY, INC.,<br>234 North James Street<br>Newport, DE 19804<br>      Defendants. | NO. 1:12-cv-00872 |

## AMENDED COMPLAINT

Plaintiff Norfolk Southern Railway Company ("NS" or "Plaintiff") alleges as follows:

### *NATURE OF THE ACTION*

1. NS is the owner of real property actively used in interstate railroad operations located in the downtown riverfront area of Wilmington, Delaware and brings this action for declaratory and injunctive relief in connection with Defendants' continuing trespass on that real property. As alleged below, Defendants' trespass ostensibly is based on a condemnation judgment obtained by the Delaware Department of Transportation ("DelDOT"). The condemnation judgment, however, was and is void and without legal effect, as it is preempted by the Interstate Commerce Commission Termination Act of 1995 and the proceedings giving rise to the judgment were both procedurally and substantively defective.

### *THE PARTIES*

2. Plaintiff NS is a Virginia corporation registered to do business in the State of Delaware with a business address of Three Commercial Place, Norfolk, Virginia 23510. NS is the legal successor in interest to Pennsylvania Lines LLC by merger.

3. NS operates approximately 21,000 miles of railway in 22 eastern states, the District of Columbia and Ontario, Canada, including a rail line known as Wilmington and Northern Branch (the "Wilmington Branch") which follows a route along streams and rivers from Reading, Pennsylvania to Wilmington, Delaware.

4. Defendant Riverfront Development Corporation of Delaware (the "RDC") is a non profit corporation organized under the laws of Delaware with an address of 815 Justison Street Wilmington, DE 19801.

5. The RDC was created in 1995 by a Governor's Task Force to revitalize former industrial areas, including an area in Wilmington along the Christiana River now known as the Riverfront Wilmington (the "Riverfront").

6. Defendant The Buccini/Pollin Group ("Buccini/Pollin") is a Delaware corporation with a registered address of 322 A Street, Suite 300 Wilmington, DE 19801.

7. Buccini/Pollin is a real estate development and management company.

8. Defendant Penn Cinema Management Company is a limited liability company organized under the laws of Pennsylvania with a business address of 541 Airport Road, Lititz, PA 17543 and a registered address of 516 E Woods Dr., Lititz, PA 17545.

9. Defendant Penn Cinema Riverfront LLC is a limited liability company organized under the laws of Delaware with a registered address of 322 A Street, Suite 300 Wilmington, DE 19801. (Defendant Penn Cinema Management Company and Penn Cinema Riverfront LLC are referred to collectively as "Penn Cinema").

10. Penn Cinema owns and operates movie theaters.

11. Defendant Star Building, LLC ("Star") is a limited liability company organized under the laws of Delaware with an address of 234 North James Street, Newport, DE 19804.

12. By deed dated March 2, 2011, the State of Delaware purportedly transferred to Star all of its rights, title and interest to portions of NS's Wilmington Branch. A true and correct copy of the recorded deed is attached as Exhibit 1.

13. Defendant Pettinaro Construction Company, Inc. ("Pettinaro") is a corporation organized under the laws of Delaware with an address of 234 North James Street, Newport, DE 19084.

14. Pettinaro is a real estate construction, development and management company.

15. RDC is the owner of property located at 401 S. Madison Street, Wilmington, and Buccini/Pollin and Penn Cinema intend to construct a $20 million IMAX movie theater complex on this property (the "Riverfront Cinema"). RDC has granted Buccini/Pollin and Penn Cinema rights to use the Unlawfully Condemned Property for parking for the Riverfront Cinema and Star and Pettinaro intend to construct the parking lot.

## *JURISDICTION AND VENUE*

16. This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(1) because this dispute is between citizens of different States and the value of the property and attendant rights in issue exceeds the sum of $75,000.

17. This Court has jurisdiction over this action under 28 U.S.C. §1331 because this matter involves a substantial question of federal law.

18. Venue exists in the District of Delaware pursuant to 28 U.S.C. §1391(b) because the property which is the subject of this action is located in this District and the Defendants own property and/or conduct business in this District.

## *THE PROPERTY*

19. NS is now and has been the lawful owner of the Wilmington Branch. A true and correct copy of the Deed conveying property from Consolidated Rail Corporation to Pennsylvania Lines LLC (the "Deed") is attached as Exhibit 2 (at record book pg. BK2800PG0093, Ex. B pg. 1). NS

acquired Pennsylvania Lines LLC, the named grantee in the Deed, by merger on August 27, 2004.

20. NS uses a portion of the Wilmington Branch to interchange railcars with CSX Transportation ("CSX"), a railroad serving the East Coast (the "Interchange Property"). The Interchange Property is the site of a dead end section of track connected to both the CSX rail system and the NS rail system. The companies leave railcars on this section of track to be picked up and transported by the other company. In the vicinity of the Riverfront, the Interchange Property follows under the Interstate Route 95 ("I-95") overpass and crosses Beech Street in Wilmington, Delaware. Where I-95 curves to the north, the Interchange Property continues northeast and crosses Linden Street in Wilmington, Delaware.

21. NS and CSX use the Interchange Property to exchange railcars on a weekly basis.

22. The Interchange Property is unique and, consequently, vital to NS because it is the only interchange with CSX within 100 miles of the Port of Wilmington, and is the only property in the area where the NS rail lines and the CSX rail lines come close enough for the interchange of railcars. There are no other properties in the vicinity at which NS can perform the interchange operations described above.

23. The Interchange Property is also the site of three towers hosting billboards visible to North and Southbound traffic on I-95 (the "Billboards"). NS has licensed the Billboards to a third party.

## *DEFENDANTS' INTENDED USE OF THE PROPERTY*

24.     The site of the Riverfront Cinema (401 S. Madison Street, Wilmington, DE 19801, tax identification number 2604200003) is adjacent to the Interchange Property.

25.     On or about June 14, 2012, Defendants began construction of the Cinema.

26.     Defendants have entered upon the Interchange Property without NS's consent.

27.     Upon information and belief, Defendants have removed or caused the removal of one or more of the towers hosting Billboards from the Interchange Property and the attached Billboards.

28.     Upon information and belief, Defendants intend to remove NS's rails on portions of the Interchange Property to make way for a 375 space parking lot for the Cinema (the "Cinema Parking Lot").

29.     Defendants Buccini/Pollin and Penn Cinema claim rights to use portions of the Interchange Property for parking for the Riverfront Cinema.

30.     On June 27, 2012, NS was advised that the construction on the Cinema Parking Lot would begin no later than August 1, 2012 and that portions of the Interchange Property would be fenced in within a week or so of June 27, 2012.  A true and correct copy of the June 27, 2012 letter received from the Delaware Department of Justice is attached as Exhibit 3.

## *THE UNLAWFUL CONDEMNATION OF PORTIONS OF*
## *THE INTERCHANGE PROPERTY*

31.     DelDOT purported to condemn portions of the Interchange Property in an action filed on February 15, 2006 in the Superior Court of the State of Delaware in and for New Castle County (C.A. No. SN06C-02-149) (the "Eminent Domain Action").  A true and correct copy of the

Certified Abstract of Record of Condemnation Proceedings on file with the Superior Court is attached as Exhibit 4. The property purportedly taken in the Eminent Domain Action is referred to herein as the "Unlawfully Condemned Property."

32. Any seizure of any portion of the Interchange Property through the Eminent Domain Action and the condemnation judgment obtained through the Eminent Domain Action unreasonably interfered with railroad operations in violation of, and were therefore preempted by, the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") (49 U.S.C. § 10101 *et. seq.* (2008)). The condemnation was and is a legal nullity.

33. The value of the Interchange Property exceeds $75,000, and any seizure of any portion of the Interchange Property results in damages exceeding $75,000.

34. Additionally, the Eminent Domain Action was procedurally and substantively defective. The Eminent Domain Action named "1.8916 ACRES of land, more or less, as a permanent taking, situate (*sic*) in the City of Wilmington, New Castle County, Delaware and UNKNOWN OWNERS" as defendants. *See* Exhibit 5.

35. The exact location of the Unlawfully Condemned Property is not precise. The legal description attached to the Certified Abstract of Record of Condemnation Proceedings (the "Legal Description") fails to designate clearly boundary lines for the property taken. *See* Exhibit 4 at Ex. A thereto. The Legal Description appears to describe three noncontiguous rectangles of property arguably encompassing only portions of the Interchange Property and other noncontiguous rectangular areas in nearby parcels.

36. NS did not receive actual or sufficient constructive notice of the Eminent Domain Action.

37. DelDOT claimed there were no known owners of the property and proceeded under 10 *Del. C.* § 6106. A true and correct copy of the Motion for Service by Publication on file with the Superior Court is attached as Exhibit 6.

38. DelDOT's inquiry into the ownership of the Unlawfully Condemned Property was deficient.

39. The Motion for Service by Publication was supported by an affidavit of Michael W. Arrington ("Arrington Aff.") (attached at Exhibit 7).

40. The Arrington Aff. stated "A search was conducted of the County Tax Records for addresses for the purported owners." Exhibit 7 at ¶3(b).

41. Mr. Arrington knew or should have known railroad rights of way are exempt from property taxes so a tax records search would not be reasonably likely to yield any information about the Interchange Property or its owner. Mr. Arrington's tax records search bore no fruit.

42. The Arrington Aff. also states that a title search was undertaken by Attorney Title Services, but fails to state the results of the title search. *See* Exhibit 7 at ¶3(c).

43. The search of land records should have located the June 1, 1999 deed from Consolidated Rail Corporation to Pennsylvania Lines LLC which lists <u>Pennsylvania Lines' tax mailing address as "c/o Norfolk Southern Railway Company, 110 Franklin Road SE, Roanoke, Virginia 24042-0023</u>." Exhibit 2.

44. Conspicuously absent from the Arrington Aff. is any indication, express or implicit, that anyone actually viewed the Interchange Property. Had he done so, he would have observed

railroad tracks prominently traversing the length of the Interchange Property and, moreover, that those tracks were in active use.

45.     Likewise, had Arrington viewed the Interchange Property, he would have seen Billboards. Inquiry through the billboard companies, obviously, would have furnished an easy and direct line to the identity of the property owner, but evidently this inquiry never was made.

46.     Based on DelDOT's motion and the Arrington Aff., the Court granted the Motion for Service by Publication on February 17, 2006. A true and correct copy of the Court's Order is attached as Exhibit 8.

47.     A notice of publication was advertised on February 20, 2006 and February 27, 2006 describing the Unlawfully Condemned Property as follows:

> The above referenced action is one for condemnation of real property, namely being 1.8916 acres of land, consisting of five parcels (0.7263 acres; 0.0032 acres; 0.4901 acres; 0.4509 acres; and 0.2211 acres), more or less, as a permanent taking, Tax Maps 26-41,43, and 49, located and running parallel to the Southeasterly side of the Northeast Amtrak Corridor between Beech Street and West Street, in the City of Wilmington, New Castle County, State of Delaware, by the Department of Transportation under the power of eminent domain for the acquisition of such property for public use.

A true and correct copy of the Notice of Publication on file with the Superior Court is attached as Exhibit 9. This description is not reasonably sufficient for the identification of the property at issue.

48.     On May 10, 2006, DelDOT filed a motion for summary judgment, which was granted as unopposed on May 23, 2006. In this motion for summary judgment, DelDOT acknowledged it knew the track on the Unlawfully Condemned Property once belonged to Philadelphia and

Reading Railroad. A true and correct copy of the motion for summary judgment is attached as Exhibit 10.

49. The seizure of an active railroad line through the Eminent Domain Action will unreasonably interfere with railroad operations in violation of ICCTA (49 U.S.C. § 10101 *et. seq.* (2008)).

50. NS's ownership of this portion of the former Philadelphia and Reading Railroad line is widely known, and this information is publically available.

51. NS had not received notice of the Eminent Domain Action as of May 23, 2006, the date of the condemnation.

52. The Superior Court's order approving notice by publication violated 10 *Del. C.* § 6106 because DelDOT failed to conduct diligent inquiry into the identity of the owners of the Unlawfully Condemned Property.

53. The Notice by Publication violated 10 *Del. C.* § 6106 because it failed to provide a brief description of the property that was reasonably sufficient for its identification.

54. Notice by Publication was inappropriate in this matter because the motion for summary judgment identified the tracks on the Unlawfully Condemned Property as belonging to "Philadelphia and Reading Railroad" and NS's ownership of this portion of the former Philadelphia and Reading Railroad line is publically available.

55. Notice by Publication was inappropriate in this matter because the Interchange Property was actively used by NS on a weekly basis.

56. Notice by Publication was inappropriate in this matter because the Billboards were actively used and maintained on the Interchange Property and ownership of the Unlawfully Condemned Property could have been readily ascertained through inquiry with the Billboard operator.

57. NS learned of the Eminent Domain Action years after the fact, and since has been in discussions with DelDOT in an effort to negotiate a resolution to this matter without litigation.

58. The negotiations were not successful, and by letter received June 27, 2012, NS was advised that the construction on the Cinema Parking Lot would begin no later than August 1, 2012 and that portions of the Interchange Property would be fenced in within a week or so of the date of the letter.

59. NS has no adequate remedy at law.

**Count I (Against All Defendants)**
**Declaratory Judgment Quieting Title**

60. NS repeats and realleges the allegations set forth in the preceding paragraphs as though set forth fully herein.

61. The Court has authority to declare the rights and responsibilities of parties pursuant to the Declaratory Judgment Act, 28 USC § 2201(a).

62. NS is the lawful owner of the Interchange Property, including the portions of the Interchange Property identified in the Certified Abstract of Record of Condemnation Proceedings on file with the Superior Court (*see* Exhibit 4).

63. The Interchange Property is used for railroad operations.

64. ICCTA (49 U.S.C. § 10101 *et. seq.* (2008)) preempts all state and local regulations that would prevent or unreasonably interfere with railroad operations.

65. Defendants claim property rights in portions of the Interchange Property based on the Eminent Domain Action.

66. Upon information and belief, Defendants have entered the Interchange Property and removed one or more of NS's Billboards.

67. Upon information and belief, Defendants intend to remove rails from the Interchange Property and construct the Cinema Parking Lot.

68. Upon information and belief, Defendants intend to and claim a right to use the Unlawfully Condemned Property for parking for the Riverfront Cinema.

69. The condemnation of the Interchange Property under Delaware State laws and regulations is a violation of ICCTA and is illegal and void.

70. The Legal Description attached to the Certified Abstract of Record of Condemnation Proceedings fails to adequately describe the property at issue and it is illegal and void.

71. The condemnation proceeding violated NS's rights by failing to conduct diligent inquiry as to the identity of the owner.

72. The Superior Court's order approving notice by publication violated 10 *Del. C.* § 6106 because DelDOT failed to conduct diligent inquiry into the identity of the owners of the Unlawfully Condemned Property.

-13-

73. The Notice by Publication violated 10 *Del. C.* § 6106 because it failed to provide a brief description of the property that was reasonably sufficient for its identification.

74. Notice by Publication was inappropriate in this matter because the Motion for Summary Judgment identified the tracks on the Unlawfully Condemned Property as belonging to "Philadelphia and Reading Railroad" and NS's ownership of this portion of the former Philadelphia and Reading Railroad line is publically available.

75. Notice by Publication was inappropriate in this matter because the Interchange Property was actively used by NS personnel on a weekly basis.

76. Notice by Publication was inappropriate in this matter because the Billboards were actively used and maintained on the Interchange Property and ownership of the Unlawfully Condemned Property could have been readily ascertained through inquiry with the Billboard operator.

77. Any purported conveyance to Star of rights, title or interest to any portion of the Unlawfully Condemned Property was illegal, void or voidable as a matter of law, and otherwise ineffective and unenforceable.

78. There is a dispute between the parties whose interests are real and adverse, which is justiciable and ripe for adjudication, respecting the validity of the condemnation of the Interchange Property.

79. The controversy that exists is ripe for judicial determination.

## Count II (Against All Defendants)
### Trespass

80. NS repeats and realleges the allegations set forth in the preceding paragraphs as though set forth fully herein.

81. NS is the lawful owner of the Interchange Property, including the portions of the Interchange Property identified in the Certified Abstract of Record of Condemnation Proceedings on file with the Superior Court attached hereto.

82. Defendants have trespassed onto the Interchange Property and removed one or more of the Billboards in which NS has contractual rights and interests.

83. Upon information and belief, Defendants intend to trespass onto the Interchange Property to remove rails from the Interchange Property and construct the Cinema Parking Lot.

84. Upon information and belief, Defendants have trespassed or intend to trespass onto the Interchange Property to park vehicles and/or equipment in connection with construction operations.

85. NS has not consented to Defendants' activities on the Interchange Property.

86. Defendants have no privilege or colorable right to enter the Interchange Property.

87. As a result of Defendants trespass, NS has been deprived of the use of the Interchange Property.

## Count III (Against All Defendants)
## Permanent Injunction Enjoining Defendants from Continued Use of Plaintiff's Property

88. NS repeats and realleges the allegations set forth in the preceding paragraphs as though set forth fully herein.

89. Because of Defendants' actions, Plaintiff is being denied the quiet enjoyment of the Interchange Property.

90. At all times relevant hereto, NS was and continues to be in possession of the Interchange Property and to use it for railroad operations.

91. The principles of fairness and equity mandate the issuance of the requested relief.

92. NS has no adequate remedy at law for the wrongs complained of above.

## Count IV (Against All Defendants)
## Temporary Restraining Order or Preliminary Injunction
## Enjoining Defendants from Continued Use of Plaintiff's Property

93. NS repeats and realleges the allegations set forth in the preceding paragraphs as though set forth fully herein.

94. NS can demonstrate a reasonable likelihood of success on the merits in connection with the claims asserted in this matter.

95. Defendants, by their actions, have shown a propensity to trespass on the Interchange Property as evidenced by their removal of one or more of the Billboards.

96. Defendants pose an imminent threat of further, irreparable damage to the Interchange Property as evidenced by the notice received by NS of the plan to fence in portions of the Interchange Property and begin construction of the Cinema Parking Lot no later than August 1,

2012, and Penn Cinema and Buccini/Pollin's intention to utilize portions of the Interchange Property to park vehicles. *See* Exhibit 3.

97. The balance of hardships weighs in favor of granting a preliminary injunction preventing Defendants from entering onto or performing any acts involving the Interchange Property.

98. An injunction is necessary to prevent immediate and irreparable injury, for which Plaintiff has no adequate remedy at law.

99. Greater harm would result from denying the injunction than from granting it.

100. The right to an injunction is clear.

101. The status quo will be restored if an injunction is granted.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Declare that Defendants' actions deprive Plaintiff of its lawful, peaceful use and quiet enjoyment of its property;

2. Forever bar Defendants from asserting any right, lien, title or interest in the Interchange Property including those portions of the Interchange Property identified in the Certified Abstract of Record of Condemnation Proceedings on file with the Superior Court;

3. Issue a **Temporary Restraining Order** and **Preliminary Injunction** prohibiting Defendants from entering or otherwise interfering with Plaintiff's peaceful use and quiet enjoyment on the Interchange Property;

4. Enter judgment in favor of Plaintiff and against Defendants, individually, jointly and/or severally for an amount in excess of $75,000.00 together with interest;

5. Grant Plaintiff its costs, disbursements and reasonable attorneys' fees; and

6. Grant Plaintiff such other, further relief as the Court may deem just and proper.

|  |  |
|---|---|
| OF COUNSEL: | */s/ R. Montgomery Donaldson*<br>R. Montgomery Donaldson (DE ID #4367)<br>Lisa Zwally Brown (DE ID #4328) |
| Gene D. Cohen<br>Tricia J. Sadd<br>Montgomery McCracken<br>Walker & Rhoads LLP<br>123 South Broad Street<br>Avenue of the Arts<br>Philadelphia, PA 19109<br>(215) 772-1500 | Montgomery McCracken<br>Walker & Rhoads LLP<br>1105 North Market St., Suite 1500<br>Wilmington, DE 19801<br>(302) 504-7800<br>Email: rdonaldson@mmwr.com<br>              lzbrown@mmwr.com |
| Dated: July 18, 2012 | *Attorneys for Plaintiff Norfolk Southern Railway Company* |